# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL CHARTER,<br><br>    Plaintiff,<br><br> v.<br><br><br><br>NIC INC., HARRY HERINGTON, ART N. BURTSCHER, VENMAL ARASU, C. BRAD HENRY, SYLVESTER JAMES, JR., ALEXANDER C. KEMPER, WILLIAM M. LYONS, ANTHONY SCOTT, JAYAPRAKASH VIJAYAN, and PETE WILSON,<br><br>    Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Michael Charter ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by NIC Inc. ("NIC" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning NIC and the Defendants.

## SUMMARY OF THE ACTION

1.       This is an action brought by Plaintiff against NIC and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to Tyler Technologies, Inc. ("Parent") and Topos Acquisition, Inc. ("Merger Sub," and together with Parent, "Tyler Technologies") (the "Proposed Transaction").

2.       On February 9, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Chevron.   Pursuant to the terms of the Merger Agreement the Company's shareholders will receive $34.00 in cash per share of NIC owned (the "Merger Consideration").

3.       On March 17, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.       For these reasons, and as set forth in detail herein, Plaintiff asserts claims against NIC and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.   Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to NIC shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5.     This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.     This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

8.     Plaintiff is, and has been at all times relevant hereto, the owner of NIC shares.

9.     Defendant NIC is incorporated under the laws of Delaware and has its principal executive offices located at 25501 West Valley Parkway, Suite 300, Olathe, Kansas 66061.  The Company's common stock trades on the NASDAQ under the symbol "EGOV."

10.    Defendant Harry Herington ("Herington") is and has been the Chief Executive Officer and Chairman of the Board of NIC at all times during the relevant time period.

11.    Defendant Art N. Burtscher ("Burtscher") is and has been a director of NIC at all times during the relevant time period.

12.    Defendant Venmal Arasu ("Arasu") is and has been a director of NIC at all times during the relevant time period.

3

13.     Defendant C. Brad Henry ("Henry") is and has been a director of NIC at all times during the relevant time period.

14.     Defendant Sylvester James, Jr. ("James") is and has been a director of NIC at all times during the relevant time period.

15.     Defendant Alexander C. Kemper ("Kemper") is and has been a director of NIC at all times during the relevant time period.

16.     Defendant Williams M. Lyons ("Lyons") is and has been a director of NIC at all times during the relevant time period.

17.     Defendant Anthony Scott ("Scott") is and has been a director of NIC at all times during the relevant time period.

18.     Defendant Jayaprakash Vijayan ("Vijayan") is and has been a director of NIC at all times during the relevant time period.

19.     Defendant Pete Wilson ("Wilson") is and has been a director of NIC at all times during the relevant time period.

20.     Defendants Herington, Burtscher, Arasu, Henry, James, Kemper, Lyons, Scott, Vijayan, and Wilson are collectively referred to herein as the "Individual Defendants."

21.     The Individual Defendants, along with Defendant NIC, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

## <u>Background of the Company</u>

22.     NIC is a digital government solutions and payments company, serving more than 7,100 federal, state and local government agencies across the nation. NIC partners with government to deliver user-friendly digital services that make it easier and more efficient to

interact with government – providing valuable conveniences such as applying for unemployment insurance, submitting business filings, renewing licenses, accessing information and making secure payments without visiting a government office. In 2020, NIC securely processed 400 million online transactions and more than $24 billion on behalf of government agencies.

## The Company Announces the Proposed Transaction

23.     On February 10, 2021, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> PLANO, Texas & OLATHE, Kan.--(BUSINESS WIRE)--Tyler Technologies, Inc. (NYSE: TYL) and NIC Inc. (NASDAQ: EGOV), jointly announced today that they have entered into a definitive agreement under which Tyler will acquire all outstanding shares of NIC in an all-cash transaction valued at approximately $2.3 billion.
>
> Under the terms of the transaction, which was unanimously approved by the boards of directors of both companies, NIC stockholders will receive $34.00 per share in cash, which represents a premium of approximately 22% to NIC's 30-day volume weighted average price as of February 9, 2021, and a 14% premium to the closing share price and 52-week closing high of $29.81 on February 9, 2021.
>
> NIC is a leading digital government solutions and payments company, serving more than 7,100 federal, state, and local government agencies across the nation. Headquartered in Olathe, Kansas, NIC delivers user-friendly digital services that make it easier and more efficient for citizens and businesses to interact with government – providing valuable conveniences like applying for unemployment insurance, submitting business filings, renewing licenses, accessing information, and making secure payments without visiting a government office. Leveraging its strong track record of innovation, NIC helps government agencies rapidly deliver new digital solutions to provide essential services to citizens and businesses alike. In fiscal year 2020, NIC delivered revenues of $460.5 million and net income of $68.6 million.
>
> "The pandemic has accelerated the shift by governments to online services and electronic payments as more citizens and businesses are interacting digitally with government. NIC is uniquely positioned with its deep expertise and robust digital solutions to partner with us in making government more efficient and more accessible to citizens," said Lynn Moore, Tyler's president and chief executive officer. "Our companies share a vision for thriving, connected communities, and our cultures are extremely compatible. The combination will provide extensive benefits for the clients, employees, and shareholders of both companies."

"This announcement marks an exciting next chapter in our 30-year history, and one that we believe will create significant value for our government partners, employees, and stockholders," said Harry Herington, NIC's chief executive officer and chairman of the board. "The combined vision, strength, and resources of our companies will accelerate our collective ability to provide innovative, efficient, transparent services to local, state, and federal governments. With this transaction, we are pleased to be able to deliver immediate, premium cash value to our stockholders and we look forward to NIC's continued success as part of Tyler."

Tyler's strength in local government and NIC's strength in state government are highly complementary. Together, the combined company expects to significantly expand its business with federal agencies and leverage Tyler's sales channels and client base to enhance NIC's scale and accelerate its strategy of bringing vertical applications to clients. In addition, NIC has extensive expertise and scale in the government payments arena, processing more than $24 billion in payments on behalf of citizens and governments in 2020, which will accelerate Tyler's strategic payments initiatives. Tyler has a history of successful acquisitions, investing in and growing acquired companies. Tyler expects NIC to continue to manage its operations from its Olathe, Kansas, home office and to retain its employees and leadership team.

**Financing, Approvals and Timing**

Tyler plans to fund the transaction with a combination of approximately $700 million of cash on Tyler's balance sheet and new debt. Tyler has obtained financing commitments for a $1.6 billion bridge facility with Goldman Sachs Bank USA and expects to replace the bridge facility with permanent financing prior to closing. The combination is expected to be accretive to Tyler's non-GAAP earnings and EBITDA, as well as recurring revenue mix and free cash flow per share, in 2021.

The transaction is subject to the satisfaction of customary closing conditions, including regulatory approvals and approval by NIC's stockholders. The transaction is expected to close in the second quarter of 2021.

**Advisors**

Goldman Sachs & Co. LLC is serving as exclusive financial advisor to Tyler, and Munck Wilson Mandala LLP is serving as legal counsel. Cowen and Company LLC is serving as exclusive financial advisor to NIC, and Shearman & Sterling LLP is serving as legal counsel.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

24.     On March 17, 2021, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

25.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding the Company's Financial Projections

26.     The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

27.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

28.    In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

29.    Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) EBITDA, and (ii) EBIT.

30.    Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.   Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Cowen's Financial Opinion**

31.    The Proxy Statement contains the financial analyses and opinion of Cowen and Company LLC ("Cowen") concerning the Proposed Transaction, but fails to provide material information concerning such.

32.    With respect to Cowen's *Selected Public Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the companies observed in Cowen's analysis.

---

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

33.     With respect to Cowen's *Selected M&A Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the transactions observed in Cowen's analysis.

34.     With respect to Cowen's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) NIC's terminal values; (ii) the inputs and assumptions underlying Cowen's use of the range of perpetuity growth rates of 2.5% to 3.5%; and (iii) the inputs and assumptions underlying Cowen's use of the discount rates ranging from 8.0% to 9.0%.

35.     With respect to Cowen's Illu*strative Present Value of Future Stock Price Analysis*, the Proxy Statement fails to disclose: (i) the basis for Cowen's application of multiples ranging from 14.6x to 16.6x; (ii) the number of fully diluted Company shares estimated to be outstanding; and (iii) the inputs and assumptions underlying Cowen's use of the discount rate of 8.6%.

36.     With respect to Cowen's *Illustrative Precedent Premiums Paid Analysis*, the Proxy Statement fails to disclose the specific transactions observed in the analysis, as well as the premiums paid in each.

37.     With respect to Cowen's *Research Analyst Price Targets* analysis, the Proxy Statement fails to disclose the specific price targets used in the analysis, as well as the sources thereof.

38.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to

better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

39.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

42.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

44.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

45.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

46.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

47.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing

materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

48.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

49.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

50.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.     The Individual Defendants acted as controlling persons of NIC within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of NIC, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially

incomplete and misleading.

52.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

54.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.      Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 17, 2021                                  Respectfully submitted,

                                                       By: */s/ Joshua M. Lifshitz*
                                                       Joshua M. Lifshitz
                                                       Email: jml@jlclasslaw.com
                                                       **LIFSHITZ LAW FIRM, P.C.**
                                                       1190 Broadway
                                                       Hewlett, New York 11557
                                                       Telephone: (516) 493-9780
                                                       Facsimile: (516) 280-7376

                                                       *Attorneys for Plaintiff*